IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LANA V. ROBERTSON,<br><br>    Plaintiff,<br><br> vs.<br><br>BLUE CROSS AND BLUE SHIELD OF<br>TEXAS and STALLION OILFIELD<br>HOLDINGS, INC.,<br><br>    Defendants. | CV 14–224–M–DWM<br><br><br>ORDER<br>and OPINION |

## INTRODUCTION

Plaintiff Lana Robertson ("Robertson") brings this action under the

Employee Retirement Income Security Act ("ERISA") seeking a declaration that a

medical procedure she needs is covered by her employer-sponsored health benefits

plan. The parties have filed cross motions for summary judgment, addressing

whether the claims administrator of the plan properly denied Robertson benefits

according to the terms of the plan. (Docs. 35, 40, 45.)

The case, and the issues presented by the cross motions are troubling. What

1

is placed at issue is the tension posed by the human person who is facing certain death in the absence of the treatment she needs, and an ERISA plan and administrator that resort to legalisms supported in some sense by the idea of the rule of law, to deny her a chance at life. Sadly, in this case and so many others decided pursuant to a law intended to protect employees, there seems to be little concern about the moral consequences of the denial of benefits. The decision in this case by the plan administrator is akin to the "death panels" of recent political history, panels ostracized and maligned for political purposes. Yet, the legalistic arguments, and the law, seem to dictate an untenable moral determination regarding the motions for summary judgment. Judge John T. Noonan Jr. of this Circuit noted aptly in <u>Persons and Masks of the Law</u>,[1] "Abandonment of the rules produces monsters; so does the neglect of persons."[2] To paraphrase Judge Noonan, at the intersection of the conflict between rules and persons, the process of the rule of law is to be understood. "A chief difficulty to understanding, however, is the presence of masks, formed by rules and concealing the person."[3] The legal reasoning justifying resolution of the pending motions is monstrous in

---

[1] University of California Press, 1976, 2002.

[2] *Id.* at 18.

[3] *Id.* at 19.

its concealing the likely life ending consequences of applying rules and ignoring the person. However, for the reasons stated below, which sound in the legal rules of interpretation and not in equity, Robertson's motion is denied and Defendants' motions are granted.

## BACKGROUND

Robertson is a participant in an employer-sponsored health benefits plan ("the Plan") established by Defendant Stallion Oilfield Holdings, Inc. ("Stallion"). The Plan is regulated by ERISA, 29 U.S.C. §§ 1001, et seq. Stallion is the Plan Sponsor and the Plan Administrator. Defendant Blue Cross and Blue Shield of Texas ("Blue Cross") is the Claims Administrator and the Claims Fiduciary. The Plan grants discretionary authority to Blue Cross to make all claim and appeal decisions under the Plan and to interpret the Plan's terms. Blue Cross is a division of Health Care Service Corporation ("Health Care Service Corp."), a mutual legal reserve company that operates in several states. The Plan's governing instruments are comprised of the Plan Document, which establishes the Plan's general terms, the Health Program booklets, which contain the Plan's benefit provisions and are adopted from year to year by Stallion, and the Summary Plan Description, which is a summary of the material provisions of the Plan Document. Robertson is enrolled specifically in the Plan's Select Plan Managed Care PPO Program.

In July of 2011, Robertson was diagnosed with diffuse systemic sclerosis, a rare autoimmune disease that causes the skin and other connective tissues in the body to tighten and harden. BCAR 807.[4] Without treatment, the disease can attack tissues in internal organs and is fatal once it infiltrates the tissues of the lungs or heart. BCAR 197, 303. Robertson initially received drug-oriented treatment under the Plan, which was ineffective. BCAR 807. Her treating physician, Dr. Richard Burt, Chief of the Division of Immunotherapy at Northwestern University Feinberg School of Medicine in Chicago, therefore recommended she have a hemapoietic stem cell transplant ("the Procedure"). BCAR 807–08.

On November 8, 2013, Robertson sought pre-approval from Blue Cross for the Procedure, specifically that she receive authorization to enroll in Dr. Burt's Food and Drug Association approved protocol, *Randomized Study of Different Non-myelobative Conditioning Regimens with Hematopoietic Stem Cell Support in Patients with Scleroderma*. BCAR 25, 805–08. The protocol has a clinical trial identifier, NCT01445821. BCAR 807. Blue Cross denied preapproval, concluding that the Procedure is "experimental, investigational, and unproven."

_____

[4] The administrative record is comprised of the Blue Cross bates stamped record filed at Doc. 34 and the Stallion bates stamped record filed at Doc. 39. The Blue Cross record will be cited as "BCAR [page]." The Stallion record will be cited as "SAR [page]."

BCAR 25, 28–29. The denial letter stated, "Per the data in peer-reviewed medical literature, autologous stem cell transplant is not effective, reliable, and safe for auto-immune diseases, including systemic sclerosis." BCAR 28. The letter also advised that "[t]he criteria used in making the adverse determination was [Health Care Service Corp.] Medical Policy: Stem-Cell Transplant for Autoimmune Disorders." *Id.*

In early December, Dr. Burt appealed the decision on behalf of Robertson, asking that the denial be overturned and that Robertson be allowed to enroll in the clinical trial protocol. BCAR 25, 907–08. Robertson's appeal was reviewed by an independent review organization, which upheld Blue Cross's previous denial. BCAR 25, 42–43. The denial letter dated December 19, 2013, stated that the Procedure is "experimental, investigational and unproven." BCAR 42. The decision was based on the conclusion that "[t]he proposed transplant for the treatment of systemic sclerosis is part of a phase 3 randomized clinical trial and is therefore considered investigational." *Id.* The letter again referenced the Health Care Service Corp. Medical Policy and advised,

> The source of screening criteria utilized as guidelines in making this determination was Blue Cross and Blue Shield of Texas Medical Policy Guidelines, which are developed by the Blue Cross and Blue Shield of Texas Medical Division and which take into consideration views of the state and national medical communities, the guidelines and practices of

5

Medicare, Medicaid, or other government-financed programs, and peer reviewed literature.

*Id.*

Robertson submitted her final appeal on February 12, 2014, which included more than 300 pages of medical records, medical articles, physician letters, and other documents.  BCAR 25–26, 113–421.  Robertson's appeal was reviewed by a different independent review organization, which again upheld the denial of benefits.  BCAR 26, 52–57.  In its letter dated February 24, 2014, the review organization concluded "[t]he requested autologous stem cell transplant . . . is considered experimental/investigational based on the Medical Policy and applicable Plan language."  BCAR 26, 52–57.  The letter quoted the Health Care Service Corp. Medical Policy provision and the Plan's definition of experimental/investigational.  BCAR 55.  The letter also summarized the conclusion of a "recent review" that supports use of the Procedure but states that ongoing trials "will determine whether the benefits of [the Procedure] outweigh the risks."  BCAR at 56.

Robertson sued Stallion and Blue Cross on September 6, 2014, claiming benefits under ERISA and seeking a declaration that the Plan provides coverage for the Procedure and attorneys' fees.  (Compl., Doc. 1.)

**DISCUSSION**

## I.    Motions to Strike and Expedite

As a preliminary matter, Robertson has filed two motions to strike and two

motions to expedite that are ripe for decision.

### A.    Motion to Strike Reply Brief

At the request of Robertson for an expedited briefing schedule during the

preliminary pretrial conference, the Court entered an Order with the following

briefing schedule:

> IT IS ORDERED that Plaintiff's motion [for entry of judgment]
> (Doc. 24) is DENIED SUBJECT TO RENEWAL as a motion for
> summary judgment, pursuant to Rule 56.
> IT IS FURTHER ORDERED that Defendants will have 28 days
> from the date the motion for summary judgment and brief are filed to
> file responses and cross-motions for summary judgment.  Plaintiff will
> have 10 days to file a reply.

(Doc. 33.)

After Robertson filed her reply, which also responded to Defendants' cross

motions for summary judgment, Blue Cross filed a reply brief.  (Doc. 60.)

Robertson moved to strike Blue Cross's reply brief because it is not allowed

pursuant to the Court's Order.  (Doc. 62.)  Blue Cross argues that the Local Rules

allow for a reply and that the Order did not preclude Defendants from filing a

reply.  (Doc. 64.)  Blue Cross also states that counsel "contacted Chambers to

7

clarify that the same '10 day' reply period would apply to [Blue Cross] for its Reply." (*Id.* at 2.)  There is no record or recollection of such a phone call by anyone in my Chambers.  Furthermore, a phone call of that nature would have been inappropriate ex parte contact.  The Court's Management Order supersedes the Local Rules for briefing deadlines, and the Order did not contemplate reply briefs from Defendants.  Blue Cross's reply brief is stricken.

**B.  Motion to Strike Declarations**

Blue Cross attached three declarations to its cross motion for summary judgment.  (Docs. 49, 50, 51.)  The declarations concern the process used by and qualifications of the medical reviewers who reviewed Robertson's request for preapproval and appeals.  Robertson wants to strike the declarations because they are not a part of the administrative record.  (Doc. 53.)

"[T]he record that was before the administrator furnishes the primary basis for review." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999).  A "district court ha[s] discretion to allow evidence that was not before the plan administrator 'only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review.'" *Id.* (quoting *Mongeluzo v. Baxter Travenol Disability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995)).  A district court may also admit supplemental evidence to review a potential conflict

of interest. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) (en banc). The appropriate standard of review here is for an abuse of discretion. And although Robertson argues that a conflict of interest exists, there is no evidence in the record to support the allegation. Therefore, no additional evidence is necessary. The declarations are stricken.

### C.    Motions to Expedite

After briefing of the cross motions for summary judgment was complete, Robertson filed two motions to expedite. (Docs. 65, 71.) Because the cross motions for summary judgment are now resolved, the motions to expedite are denied as moot.

## II.    Cross Motions for Summary Judgment

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

## A.    Standard of Review

Robertson insists that Blue Cross's denial of benefits can be reviewed under a de novo standard.  (Doc. 37 at 17.)  Stallion and Blue Cross argue the denial must be reviewed for an abuse of discretion.  (Docs. 43 at 12; 46 at 17.)  "[F]or a plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator."  *Abatie*, 458 F.3d at 963.  The parties have stipulated that "[t]he Plan confers discretionary authority to [Blue Cross] to construe terms of the Plan," (Stipulated Statement of Facts, Doc. 31 at 2), and the Plan unambiguously provides discretion to Blue Cross, SAR 84–85.  Therefore, an abuse of discretion standard applies.

Robertson claims that a violation of ERISA procedural requirements requires a de novo review and that Blue Cross "did just that" by failing to engage in a medical necessity analysis and by withholding the information it relied on in making its determination.  (Doc. 37 at 19.)  "Under ERISA, plan administrators must follow certain practices when processing and deciding plan participants' claims. . . . [but] an administrator's failure to comply with such procedural requirements ordinarily does not alter the standard of review."  *Abatie*, 458 F.3d at 971.  Only "[w]hen an administrator engages in wholesale and flagrant violations

of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan," will the decision to deny benefits be reviewed de novo. *Id.* When a case does not "fall into that rare class of cases," any procedural errors made by the administrator are instead "to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Id.* at 972.

There is no proof that Blue Cross engaged in "wholesale and flagrant violations" of the ERISA procedural requirements. Blue Cross did not violate ERISA by refusing to make a medical necessity determination, and Blue Cross's reliance on its determination that the Procedure is experimental/investigational will be considered in determining whether the denial was an abuse of discretion. Blue Cross met the procedural requirement to provide "adequate notice in writing" of the reasons for denial and a "full and fair review" of the decision, 29 U.S.C. § 1133, by notifying Robertson of the policy provision it relied on, that additional information was available "upon request and free of charge," 29 C.F.R. § 2560.503-1(h)(2)(iii), and that the decision may be appealed. BCAR 28–29, 42–43, 52–57. Therefore, any procedural irregularities do not alter the standard of review.

Robertson also argues that an inherent conflict of interest that affects a benefits determination alters the standard of review and that Blue Cross had such a

conflict because of both its pecuniary interest in denying Robertson coverage and its interest in establishing precedent for future denials of coverage for the Procedure. (Doc. 37 at 20.) An "inherent conflict [may] exist[] when a plan administrator both administers the plan and funds it." *Abatie*, 458 F.3d at 967. Yet such a conflict does not alter the standard of review and should instead be "weighed as a factor" in determining whether there was an abuse of discretion in denying benefits. *Id.* at 969 (internal quotation marks omitted).[5]

In this case, no such conflict of interest exists. Blue Cross is the Claims Administrator and does not fund the Plan. (Doc. 31 at 2.) Also, Robertson has not produced any evidence demonstrating that Blue Cross, as an operating division of Health Care Service Corp., had a vested pecuniary interest in denying coverage or that it sought to establish precedent for future denials of coverage. Not only does the abuse of discretion standard apply, there is no conflict of interest to be weighed as a factor in determining whether Blue Cross abused its discretion in denying coverage.

The test for abuse of discretion is whether the court is "'left with a definite

---

[5] Robertson relies on *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 797–98 (9th Cir. 1997), for the proposition that a conflict of interest alters the standard of review. But *Lang* relied on *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995), which was overruled in its entirety by *Abatie*, 458 F.3d at 967.

and firm conviction that a mistake has been committed,'" and the court "may not merely substitute [its] view for that of the fact finder." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc)). The considerations are "whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Id.* "'A plan administrator abuses its discretion if it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination.'" *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) (quoting *Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trustees*, 588 F.3d 641, 649 (9th Cir. 2009)).

B.      **Whether Blue Cross Abused Its Discretion in Denying Benefits**

Without making a medical necessity determination, Blue Cross denied preapproval of the Procedure because it concluded the Procedure is experimental/investigational. Robertson argues the Procedure is not experimental or investigational under the terms of the Plan and that the Procedure is medically necessary, which "trumps" the experimental/investigational exclusion. (Doc. 37 at 9–15.)

The "Medical Limitations and Exclusions" provision of the Plan provides,

> The benefits as described in this Benefit Booklet are not available for:
> 1.      Any services or supplies which are not Medically Necessary and essential to the diagnosis or direct care and treatment of a sickness, injury, condition, disease, or bodily malfunction.
> 2.      Any Experimental/Investigational services and supplies.
> . . . .

SAR 148.

## 1.     Experimental/Investigational

Robertson insists Blue Cross's determination that the Procedure is experimental/investigational was an abuse of discretion because the Plan's clinical trial exclusion does not apply to the Procedure. (Doc. 37 at 9.)

According to the Plan,

> **Experimental/Investigational** means the use of any treatment, procedure, facility, equipment, drug, device, or supply not accepted as *standard medical treatment* of the condition being treated or any of such items requiring Federal or other governmental agency approval not granted at the time services were provided.
>
> . . . .
>
> *Standard medical treatment* means the services or supplies that are in general use in the medical community in the United States, and:
> •     have been demonstrated in peer reviewed literature to have scientifically established medical value for curing or alleviating the condition being treated;
> •     are appropriate for the Hospital or Facility Other Provider in which they were performed; and
> •     the Physician or Professional Other Provider has had the

14

appropriate training and experience to provide the treatment or procedure.

The Claim Administrator for the Plan shall determine whether any treatment, procedure, facility, equipment, drug, device, or supply is Experimental/Investigational, and will consider the guidelines and practices of Medicare, Medicaid, or other government-financed programs in making its determination.

Although a Physician or Professional Other Provider may have prescribed treatment, and the services or supplies may have been provided as the treatment of last resort, the Claim Administrator still may determine such services or supplies to be Experimental/Investigational within this definition. <u>Treatment provided as part of a clinical trial or a research study is Experimental/Investigational.</u>

SAR 156–57 (underlined emphasis added).

An employee benefit plan must be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). A plan fiduciary "shall discharge [its] duties with respect to a plan . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Likewise, a claim for benefits under the statutory scheme may be brought by a plan participant or beneficiary "to recover benefits due to [her] under the terms of the plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A claim for benefits "therefore stands or falls by 'the terms of the plan.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting § 1132(a)(1)(B)).

The Plan's provision that "[t]reatment provided as part of a clinical trial or a research study is Experimental/Investigational" is unambiguous. There is no question that Robertson sought to enroll in a phase 3 clinical trial, as both she and Dr. Burt acknowledged. BCAR 807, 113. The clinical trial is described as a "study" that will provide treatment to the participants in both the "control" and "experimental" arms of the program, which is to run from 2011 to 2018. BCAR 186–94. The Plan must be enforced according to its terms, and Blue Cross arguably construed the Plan's experimental/investigational exclusion in a legally reasonable way in denying preapproval of the Procedure, which was treatment provided as a part of a clinical trial. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 239 (4th Cir. 2008) ("ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA." (citing 29 U.S.C. § 1102(a)(1)).

Moreover, Dr. Burt acknowledged that the Procedure is not "standard therapy" for severe systemic sclerosis. BCAR 808, 908. The medical literature Robertson submitted with her final appeal shows that the Procedure is still under investigation, is associated with treatment-related mortality, but is not "in general use in the medical community" for the treatment of systemic sclerosis. BCAR 120–85.

Robertson claims that the clinical trial exclusion is inapplicable because the clinical trial for which she seeks enrollment is not testing whether the Procedure itself is safe and effective but rather is examining whether a less intense regimen for the Procedure is safer and yet as effective as the standard regimen, which was established during a prior clinical trial.  (Doc. 37 at 10–11; BCAR 186–87.)  Although this argument may have merit, Robertson cites no authority or Plan provision supporting her restricted definition of "clinical trial."  To the contrary, the clinical trial exclusion broadly excludes "treatment provided *as a part of* a clinical trial," which in no way limits the exclusion to clinical trials testing particular outcomes.  BCAR 157 (emphasis added).  Unfortunately, Blue Cross did not abuse its discretion in relying on the clinical trial exclusion to deny benefits under the Plan.  It examined the needs of the Plan and ignored the needs of Lana Robertson, a process protected by the rules cited.

Blue Cross also relied on the Health Care Service Corp. Medical Policy in denying coverage.  Health Care Service Corp. "has medical policies that serve as guidelines for [its operating divisions, including Blue Cross of Texas] for health care benefit coverage decisions, which may vary according to the different products and benefit plans offered by each state."  Available at http://www.hcsc.com/medical _policies.html (accessed Apr. 14, 2015).  Health

Care Service Corp.'s Medical Policy for Stem-Cell Transplant for Autoimmune Disorders states that the Procedure "[i]s considered experimental, investigational and unproven for treatment of any autoimmune disease, including but not limited to MS, JRA, RA, SLE, systemic sclerosis/scleroderma, and TIDM." BCAR 90–91.

Robertson claims that Health Care Service Corp.'s guidelines provide no medical or legal basis for denying her request for coverage because the guidelines have not been peer reviewed or incorporated into the Plan documents. (Doc. 37 at 12.) Her view is that the discussion in the relevant Medical Policy demonstrates that the Procedure is more effective than drug therapy, which necessitates coverage because drug therapy has been ineffective in her case. (*Id.*) The Policy provision states that the Plan documents govern, BCAR 90, and a claim for benefits "stands or falls by the terms of the plan," *Kennedy*, 555 U.S. at 300 (internal quotation marks omitted). Where Blue Cross reasonably relied on the Plan's clinical trial exclusion, as discussed above, its additional reliance on the Medical Policy is of no consequence regardless of whether or not the Policy supports coverage.

## 2. Medical Necessity

Robertson insists Blue Cross abused its discretion by not making a medical

necessity determination and that a finding of medical necessity would "trump" the experimental/investigational exclusion. (Doc. 37 at 14.)

According to the Plan,

**Medically Necessary** or **Medical Necessity** means those services or supplies covered under the Plan which are:

1.   Essential to, consistent with, and provided for the diagnosis or the direct care and treatment of the condition, sickness, disease, injury, or bodily malfunction; and
2.   Provided in accordance with and are consistent with generally accepted standards of medical practice in the United States; and
3.   Not primarily for the convenience of the Participant, his Physician, Behavioral Health Practitioner, the Hospital, or the Other Provider; and
4.   The most economical supplies or levels of service that are appropriate for the safe and effective treatment of the Participant.
. . .

The medical staff of the Claim Administrator shall determine whether a service or supply is Medically Necessary under the Plan and will consider the views of the state and national medical communities, the guidelines and practices of Medicare, Medicaid, or other government-financed programs, and peer reviewed literature. Although a Physician, Behavioral Health Practitioner or Professional Other Provider may have prescribed treatment, such treatment may not be Medically Necessary within this definition.

SAR 161.

Robertson maintains that the experimental/investigational exclusion cannot apply to services that are medically necessary and that, at the very least, the Plan is ambiguous and must be construed in her favor. (Doc. 37 at 16.) However,

according to the terms of the Plan, a service must be both "covered" and satisfy

the four criteria to be medically necessary.  SAR 161.  The Plan unambiguously

states that benefits are not available for experimental/investigational services.

SAR 148.  Thus, "[t]he Plan covers treatment which is medically necessary but

limits treatment to that which is not experimental." *Tillery v. Hoffman Enclosures,

Inc.*, 280 F.3d 1192, 1200 (8th Cir. 2002) (cited in *Rush Prudential HMO, Inc. v.

Moran*, 536 U.S. 355, 380 n.10 (2002) (Some insurance contracts may "guarantee

medically necessary care, but then modify that obligation by excluding

experimental procedures from coverage.").  To interpret the Plan to cover all

medically necessary treatments regardless of any exclusions or limitations would

render those exclusions meaningless.  *See Johnson v. Am. United Life Ins. Co.*,

716 F.3d 813, 820 (4th Cir. 2013).  As a consequence, the medically necessary

provision is not ambiguous and it does not "trump" the experimental/

investigational exclusion.  Blue Cross did not legally abuse its discretion by not

making a medically necessary determination.

Robertson also maintains that under the reasonable expectations doctrine,

the experimental/investigational exclusion is unenforceable.  (Doc. 37 at 15–16.)

Under that doctrine, where a "plan's attempted exclusion was not clear, plain, and

conspicuous enough to negate the claimant's objectively reasonable expectations

of coverage, it was unenforceable and the plan was liable for the coverage at issue." *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995). Although Robertson may reasonably expect coverage for any treatment that is medically necessary under the terms of the Plan, the experimental/investigational exclusion is plain, conspicuous, and is enforceable. It is listed as the second exclusion under the "Medical Limitations and Exclusions" section of the Booklet, just under the first limitation for medical necessity. SAR 148. The exclusion is also listed in bold-face type and defined in the "Definitions" section of the Booklet. SAR 156–57. The clinical trial exclusion is buried within the experimental/investigational definition, but there is sufficient record evidence supporting the conclusion that the Procedure is also experimental/investigational because it is not "standard medical treatment." BCAR 156–57.

Robertson included in her final appeal paperwork, and highlights now, four instances where Blue Cross and Blue Shield entities approved the same Procedure because it was medically necessary, despite a prior determination that it was experimental/investigational. BCAR 278–95. One of these instances involves Blue Cross and Blue Shield of Illinois, which is also a division of Health Care Service Corp. BCAR 292–94. Although it is disconcerting that Blue Cross entities may be making inconsistent determinations, the relevant plan language

21

under which those determinations were made are not a part of the record. Thus, the consequential moral problem in how Lana Robertson's case was decided. It is unknown how narrow or broad the medical necessity and experimental or investigational definitions[6] are in those cases, all of which involved plans and claims administrators that are different from this case. Those cases are therefore not relevant and cannot be used in analyzing whether Blue Cross abused its discretion in this case under the terms of Robertson's Plan.

Robertson's medical condition cannot be conflated with her legal condition so that the Court is "left with a definite and firm conviction that a mistake has been committed." *Salomaa*, 642 F.3d at 676 (internal quotation marks omitted). Under the law, Blue Cross acted legally in denying preapproval of the Procedure because Robertson's enrollment in the phase 3 clinical trial is excluded as experimental/investigational under the terms of the Plan.

## CONCLUSION

The case is a troubling example of how sometimes the law and justice can pass like ships in the night. Robertson faces death as a result of a rare disease, the treatment of which her insurance will not cover despite her valid enrollment in the

---

[6] *See* Stallion's Brief (Doc. 43 at 22 (establishing that actual experimental/investigational definitions vary widely from plan to plan and gathering cases that demonstrate the spectrum of definitions)).

Plan. Robertson's doctors have stated that the Procedure is medically necessary, yet Defendants deny her that treatment under the legal shield of the terms of the Plan (while other Health Care Service Corp. entities approve the same treatment for other individuals). ERISA was enacted to protect the interests of participants in employee benefits plans. 28 U.S.C. § 1001. The result here does not comport with that intent. The masks of the law in this case conceals the person at risk of dying by a deferential standard of review and the rules of legal interpretation. The result is a determination that Blue Cross's denial of benefits was legally, but perhaps not morally, reasonable.

Accordingly, IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 35) is DENIED.

IT IS FURTHER ORDERED that Defendant Stallion's Motion for Summary Judgment (Doc. 40) and Defendant Blue Cross's Cross Motion for Summary Judgment (Doc. 45) are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Declarations (Doc. 53) and Motion to Strike Reply Brief (Doc. 62) are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motions to Expedite (Docs. 65, 71) are DENIED AS MOOT.

IT IS FURTHER ORDERED that this case is CLOSED. The Clerk of Court

is directed to enter judgment in favor of Defendants and against Plaintiff.

DATED this 15th day of April, 2015.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT